## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MYRON and SANDY CANSON, Jointly and on Behalf of All Others Similarly Situated,<br><br>                                 Plaintiffs,<br><br>            v.<br><br>WEBMD HEALTH CORP., WAYNE T. GATTINELLA and ANTHONY VUOLO,<br><br>                                 Defendants. | Case No: 1:11-CV-05382-JFK<br><br>**ECF CASE** |
| STEVEN MALLAND, Individually and On Behalf of All Others Similarly Situated,<br><br>                                 Plaintiff,<br><br>            vs.<br><br>WEBMD HEALTH CORP., WAYNE T. GATTINELLA and ANTHONY VUOLO,<br><br>                                 Defendants. | Case No: 1:11-CV-06031-JFK<br><br>**ECF CASE** |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
## THE MICHIGAN FUNDS FOR CONSOLIDATION,
## APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

**Table of Contents**

Page

I.     PRELIMINARY STATEMENT .......................................................... 1

II.    STATEMENT OF FACTS ................................................................ 2

III.   OVERVIEW OF APPLICABLE LAW ............................................. 5

IV.   THE ACTIONS SHOULD BE CONSOLIDATED ............................ 6

V.    THE MICHIGAN FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF FOR
       THE CLASS ..................................................................................... 8

       A.    The Michigan Funds' Motion to Serve as Lead Plaintiff Is Timely ............................ 8

       B.    The Michigan Funds Are Believed to Have the Largest Financial Interest in the
             Relief Sought by the Class ........................................................................ 8

       C.    The Michigan Funds Satisfy the Typicality and Adequacy Requirements of
             Rule 23 ..................................................................................... 10

             1.    The Michigan Funds' Claims Are Typical of the Claims of the Class ................... 10

             2.    The Michigan Funds Will Fairly and Adequately Represent the Interests of
                   the Class ............................................................................. 11

VI.   THE COURT SHOULD APPROVE THE MICHIGAN FUNDS' CHOICE OF LEAD
       COUNSEL ..................................................................................... 11

VII.  CONCLUSION................................................................................ 12

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                              <u>Page(s)</u>

*Albert Fadem Trust v. Citigroup Inc.*,
   239 F. Supp. 2d 344 (S.D.N.Y. 2002) ........................................................................... 6, 9, 10

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir.1992) ........................................................................................... 10

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir.) ................................................................................................. 6, 7

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .............................................................................. 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................................. 10, 11

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115, 129 (S.D.N.Y. 1997) .......................................................................... 7

*Sofran v. LaBranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ................................................................................. 9, 11

<u>Statutes</u>

15 U.S.C. § 78u-4 .................................................................................................................. 7

15 U.S.C. § 78u-4(a)(1) ........................................................................................................ 8

15 U.S.C. § 78u-4(a)(3) ........................................................................................................ *passim*

15 U.S.C. § 78u-4(e)(1) ........................................................................................................ 9

15 U.S.C. § 78u-4(e)(2) ........................................................................................................ 9

<u>Rules</u>

Fed. R. Civ. P. 23(a) ............................................................................................................. 10, 11

Fed. R. Civ. P. 23(a)(4) ......................................................................................................... 11

Fed. R. Civ. P. 42(a) ............................................................................................................. 6, 7

Wayne County Employees' Retirement System and Carpenters Pension Trust Fund - Detroit and Vicinity (together, "The Michigan Funds"), respectfully submit this memorandum of law in support of their motion for: (i) consolidation of the Actions (defined below); (ii) appointment of Lead Plaintiff in the Actions; and (iii) approval of their selection of Lead Counsel for the putative class. The Michigan Funds purchased securities of WebMD Health Corp. ("WebMD" or "the Company") and suffered damages as a result of the alleged violations of the federal securities laws by defendants WebMD, Wayne T. Gattinella ("Gattinella") and Anthony Vuolo (collectively, the "Defendants").[1]

## I.    PRELIMINARY STATEMENT

This Court should consolidate the pending related securities class actions against the Defendants (the "Actions"). Consolidating the Actions is appropriate because they involve common factual and legal issues. This Court should also appoint The Michigan Funds as Lead Plaintiff for the class. The Michigan Funds' motion to be appointed Lead Plaintiff is timely under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Michigan Funds submit they are also the "most adequate plaintiff" to serve as Lead Plaintiff. In fact, they satisfy each of the PSLRA's requirements for appointment as Lead Plaintiff. At this time, The Michigan Funds believe that they have the "largest financial interest" in the relief sought by the class, having purchased 24,700 shares of WebMD common stock and suffered estimated losses of $540,283.49. Brodsky Aff., Exs. C, D and E. Further, The Michigan Funds' claims

---

[1]   The Michigan Funds have submitted certifications setting forth their transactions in WebMD securities during the relevant period. *See* Exhibits C and D to the Affidavit of Stephen L. Brodsky in Support of the Motion of the Michigan Funds for Consolidation, Appointment of Lead Plaintiff and Approval of Lead Counsel (the "Brodsky Aff."). The Michigan Funds have also submitted a chart, pertaining to their transactions in the common stock WebMD, that sets forth The Michigan Funds' financial interest in the Actions. Brodsky Aff., Ex. E. The Michigan Funds are fully familiar with the facts and allegations in the cases filed in this District.

against the Defendants are typical of the claims of the other class members, and their interests are aligned with the interests of the class.  Finally, The Michigan Funds have retained qualified counsel and will vigorously prosecute the Actions.  Their selection of counsel should be approved as Lead Counsel for the putative class.

## II.   STATEMENT OF FACTS

This is a putative class action brought on behalf of a Class consisting of all persons and entities who purchased the common stock of WebMD during the period from February 23, 2011 through and including July 15, 2011 (the "Class Period") to recover damages caused by the Defendants' violation of the federal securities laws.[2]  ¶¶ 1, 15.   WebMD provides health information services to consumers, physicians and other healthcare professionals, employers, and health plans through its public and private online portals, mobile applications, and health-focused publications in the United States.  ¶¶ 21-26.  The Company generates revenue from its public portals primarily through the "sale of advertising and sponsorship products." ¶ 24.   The Company generates revenue from its private portals through "the licensing of these portals and related services to employers and health plans either directly or through distributors."  ¶ 26.

On the first day of the Class period, February 23, 2011, WebMD issued a press release announcing its financial results for the fourth quarter and fiscal year of 2010.  For the quarter, WebMD reported revenues of $168.5 million and net income of $36.6 million or $0.59 per share.  Defendant Gattinella, commenting on the results, said, "WebMD finished 2010 with another quarter of strong financial and operating performance. We solidified our position as the most

---

[2]  "¶" references are to the allegations of the complaint filed in *Canson v. WebMD Health Corp.*, Case No. 1:11-CV-05382-JFK (S.D.N.Y.).  *See* Brodsky Aff., Ex. B.

recognized and trusted brand of health and wellness information as more than 86 million visitors are engaging with our content each month on both our desktop and mobile platforms." ¶ 27.

With regard to the Company's outlook for 2011, the press release stated in pertinent part that, "Revenue to be approximately $610 million to $640 million, an increase of 14% to 20% over 2010. These amounts represent expected growth of approximately 16% to 23% in public portal advertising and sponsorship revenue over 2010 while private portal services revenue is expected to be essentially flat compared to 2010." It further stated, for the first quarter of 2011, "Revenue to be in excess of $125 million, an increase of at least 16% over the prior year period. Advertising revenue is expected to increase at least 20% while private portal revenue is expected to be consistent with the prior year period." In response, on February 24, 2011, the price of WebMD stock rose $4.53 per share, or 9%, to close at $56.83 per share. ¶¶ 27, 28.

On March 8, 2011, WebMD issued a press release announcing that it was offering $300 million of Convertible Notes due 2016 in a private placement.[3] ¶ 29. On March 9, 2011, the Company issued a press release announcing that it priced the private placement of $350 million aggregate principal amount of 2.25% Convertible Notes due 2016. The press release stated that the notes are convertible into shares of WebMD common stock based on an initial conversion rate of 13.5704 shares of WebMD common stock per $1,000 principal amount of notes, which is equivalent to an initial conversion price of approximately $73.69 per share" – "a premium of

---

[3] The release stated that WebMD "also expects to grant the initial purchaser in the proposed offering an option to purchase up to an additional $50 million aggregate principal amount of notes." The notes will be convertible into shares of WebMD's common stock. Moreover, the Company stated that it "intends to use up to $50 million of the net proceeds from the sale of the notes to repurchase shares of its common stock, and to use the remainder of the net proceeds for general corporate purposes, which may include acquisitions and additional repurchases of its common stock, and for working capital." ¶ 29.

approximately 28% over the closing price of WebMD common stock [] on March, 8, 2011." The offering closed on March 14, 2011. ¶ 30.

On April 12, 2011, the Company issued a press release announcing that it "expects that its results for the quarter ended March 31, 2011 will exceed First Call consensus analyst estimates of $126.2 million for revenue and $34.0 million for earnings before interest, taxes, non-cash and other items." Moreover, the Defendants reaffirmed their financial guidance for calendar year 2011. In reaction to this announcement, the price of WebMD stock rose $1.92 per share, or 4%, to close at $51.11 per share. ¶¶ 31, 32.

On May 5, 2011, WebMD issued a press release announcing financial results for the first quarter of 2011. For the quarter, the Company reported revenues of $131.6 million and net income of $19.5 million or $0.32 per share. ¶ 34. Following that release, the Company held a conference call in which it disclosed that "we are seeing an increasing level of marketing conservatism on the part of big pharma" resulting in "a more cautious and longer approval cycle" and "situations where large pharma has chosen not to participate in digital platforms . . . until the FDA provides greater clarity and direction." Furthermore, the "heightened conservatism" was "reflected in the full year guidance that we issued earlier this year." ¶ 35.

Following this news, WebMD's share price fell 10% ($5.58 per share) closing at $50.96 per share on May 6, 2011. ¶ 36. On July 18, 2011, the full extent of the Defendants' deception was revealed when WebMD issued a press release announcing preliminary second quarter financial results and updated financial guidance for 2011. Following the news of the lower revisions to the Company's financial guidance as a result of the previously concealed problems, WebMD's share price fell approximately 30% ($14.01 per share), closing at $32.48 per share. ¶¶ 37-38.

4

The Defendants' statements were materially false and misleading and failed to disclose material facts regarding the Company's business. Specifically, the Defendants failed to disclose that: (a) WebMD was experiencing sponsorship cancellations due to extended legal and regulatory reviews; (b) that WebMD's customers, including several consumer product companies, were delaying advertising on the Company's website as a result of smaller advertising budgets; and (c) as a result, the Defendants lacked a reasonable basis for their positive statements about the Company and its prospects. ¶ 33. The Defendants were further motivated to engage in the fraud to enable the Company to complete the private offering which closed on March 14, 2011. ¶ 43. Finally, during the Class Period, corporate insiders engaged in insider selling, profiting from the deception. ¶ 44.

## III. OVERVIEW OF APPLICABLE LAW

The PSLRA sets forth the procedure for appointing the lead plaintiff in a securities class action. The first step requires providing notice to members of the putative class of the pendency of a class action, the claims asserted, and the purported class period. Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)  of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)  that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).[4]

The PSLRA also sets out the requirements for selection of a lead plaintiff to oversee class actions brought pursuant to the federal securities laws. 15 U.S.C. § 78u-4(a)(3). There is a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the person who:

> (aa)  has either filed the complaint or made a motion in response to [aforementioned] notice . . .;
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, The Michigan Funds satisfy each of the PSLRA's statutory requirements to serve as Lead Plaintiff here.

## IV.  THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA establishes a two-step process for resolving lead plaintiff and consolidation issues when multiple actions asserting substantially the same claims on behalf of a class have been filed. A court must first decide the consolidation motion and then decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Consolidation of actions pursuant to Fed. R. Civ. P. 42(a) is appropriate when the actions involve common questions of law and fact. *See Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir.), *cert. denied,* 498 U.S. 920 (1990); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Under Rule 42(a), this Court has broad discretion to determine whether consolidation is appropriate, and in making this determination, should consider whether judicial economy favors consolidation. *See Albert Fadem Trust*, 239 F. Supp. 2d at 347;

---

[4] 15 U.S.C. § 78u-4 amends the Securities Exchange Act of 1934 (the "Exchange Act") to adopt the PSLRA's provisions.

*Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 129 (S.D.N.Y. 1997) ("[S]o long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate."); *see also Johnson,* 899 F.2d at 1285.   It is "well recognized" that the "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs." *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998) (internal quotations and citation omitted).

Presently, pending before this Court are two related securities class action cases:

| Case Name | Case No. |
|---|---|
| *Canson v. WebMD Health Corp.* | 1:11-CV-05382-JFK |
| *Malland v. WebMD Health Corp.* | 1:11-CV-06031-JFK |

The Actions arise from the same set of operative facts and alleged course of conduct by the Defendants involving purchase of WebMD securities, and raise the same legal issues pursuant to Sections 10(b) and 20(a) of the Exchange Act.   Thus, the Actions, and any related actions that are subsequently filed in this District or transferred to this District, should be consolidated.

The selection of lead plaintiff and lead counsel is the necessary first step to begin prosecution of the Actions.   The PSLRA contemplates a ninety-day period from the early notice publication to the selection of lead plaintiff.   15 U.S.C. § 78u-4(a)(3)(B)(i).   Because the PSLRA explicitly ties the selection of a lead plaintiff to the consolidation of related actions, The Michigan Funds respectfully request that this Court grant the consolidation motion as soon as practicable.   A prompt determination is reasonable and warranted under Fed. R. Civ. P. 42(a).

## V.   THE MICHIGAN FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

The PSLRA provides guidelines for the appointment of a lead plaintiff in "each private action arising under [the securities laws] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1).  Because The Michigan Funds are the "most adequate plaintiff," as defined by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), they should be appointed Lead Plaintiff for the class.

### A.  The Michigan Funds' Motion to Serve as Lead Plaintiff Is Timely

Within sixty days after the publication of a notice of a class action, any person or group of persons that is a member of the proposed class may move the Court to be appointed lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Here, the earliest notice of a class action regarding Defendants was published on August 2, 2011.  *See* Brodsky Aff., Ex. A.  As purchasers of WebMD securities during the alleged Class Period, The Michigan Funds are members of the putative class and have timely moved for appointment as Lead Plaintiff within sixty days of the notice, in compliance with the PSLRA.[5]  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).  The Michigan Funds therefore satisfy the PSLRA's initial requirement.

### B.  The Michigan Funds Are Believed to Have the Largest Financial Interest in the Relief Sought by the Class

Pursuant to the PSLRA, this Court should next determine which lead plaintiff applicant has the "largest financial interest" in the relief sought by the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Although the PSLRA does not specifically indicate the manner in which

---

[5] The PSLRA does not require The Michigan Funds to have filed a complaint against the Defendants. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) (instructing that the most adequate plaintiff will have *either* filed the complaint or made a motion for appointment as lead plaintiff).

the "largest financial interest" should be calculated, it provides that a plaintiff's damages in any securities fraud class action may not exceed:

> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

15 U.S.C. § 78u-4(e)(2).

Alternatively, when a plaintiff continues to hold the security that is the subject of the action, damages may not exceed:

> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1).

The Michigan Funds believe at this time that they have the "largest financial interest" in the relief sought by the class. During the Class Period, they purchased 24,700 shares of WebMD common stock and suffered estimated losses of $540,283.49. *See* Brodsky Aff., Exs. C, D and E. Given their significant financial interest, the Michigan Funds believe that they satisfy the PSLRA's second requirement for appointment as Lead Plaintiff. Pursuant to the PSLRA, the movant with the greatest financial interest is, in fact, *presumptively* the "most adequate" to serve as Lead Plaintiff. *See Albert Fadem Trust*, 239 F. Supp. 2d at 347. Once the movant with the *largest* financial interest is determined, the inquiry ends and the Court must look *no further* at the other lead plaintiff candidates, unless the adequacy and typicality of the presumptive lead plaintiff is rebutted. *See Sofran v. LaBranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004).

**C. The Michigan Funds Satisfy the Typicality and Adequacy Requirements of Rule 23**

In addition to meeting the PSLRA's requisites set forth above, a lead plaintiff must also satisfy the requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

For purposes of appointing a lead plaintiff, however, a wide-ranging analysis under Fed. R. Civ. P. 23 is not appropriate at this stage of the litigation. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004). All that is required is a "preliminary showing" that the proposed lead plaintiff will satisfy the requirements of typicality and adequacy. *Id.*; *Albert Fadem Trust*, 239 F. Supp. 2d at 347. As discussed below, The Michigan Funds satisfy both the typicality and adequacy requirements of Rule 23(a), further supporting its appointment as Lead Plaintiff.

### 1.   The Michigan Funds' Claims Are Typical of the Claims of the Class

Pursuant to Fed. R. Civ. P. 23(a), the claims or defenses of the representative party must be typical of those of the class. "Typicality exists if claims 'arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Pirelli*, 229 F.R.D. at 412 (*quoting In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed sub nom., Hart Holding Co. v. Drexel Burnham Lambert Group, Inc.,* 506 U.S. 1088 (1993)). The claims of the lead plaintiff need not be identical to the

claims of the class to satisfy typicality.  *Id.*

The Michigan Funds satisfy the typicality requirement of Fed. R. Civ. P. 23(a).  The Michigan Funds' claims and the class' claims arise from damages sustained due to the same alleged course of conduct by the Defendants during the Class Period.  Further, The Michigan Funds and class members assert the same violations of federal securities laws.

> 2.  The Michigan Funds Will Fairly and Adequately Represent the Interests of the Class

Under Fed. R. Civ. P. 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  *Pirelli*, 229 F.R.D. at 412.  To "satisfy the adequacy requirement . . ."  (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation.'"  *Sofran*, 220 F.R.D. at 403.  *See also Pirelli*, 229 F.R.D. at 413.

The Michigan Funds' interests are aligned with — and certainly are not antagonistic to — the interests of the other class members.  Like the other class members, they are victims of the Defendants' alleged fraud and sustained damaged when the truth about WebMD's business and prospects was revealed to investors.  Due to their significant financial stake in the Actions, interest in prosecuting the Actions, and choice of proposed Lead Counsel, it is clear that the Michigan Funds will vigorously prosecute the claims against Defendants and protect the interests of the class.

## VI.    THE COURT SHOULD APPROVE THE MICHIGAN FUNDS' CHOICE OF LEAD COUNSEL

Pursuant to the PSLRA, the lead plaintiff is permitted, subject to the Court's approval, to select and retain counsel to represent the class.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Michigan Funds have selected and retained Zwerling, Schachter & Zwerling, LLP ("Zwerling, Schachter")

to represent them and serve as lead counsel for the putative class.  Zwerling, Schachter has extensive experience in the areas of securities class action litigation and other complex litigation, and has been responsible for significant successful results on behalf of injured investors in numerous securities class action lawsuits, as well as legal decisions that enable litigation such as this to be successfully prosecuted.  *See* Brodsky Aff., Ex. F.

**VII.    CONCLUSION**

For the foregoing reasons, the Michigan Funds respectfully request that the Court: (1) consolidate the Actions; (2) grant their motion for appointment as Lead Plaintiff; and (3) approve their choice of Zwerling, Schachter as Lead Counsel for the putative class.

Dated:  October 3, 2011

Respectfully Submitted,

**ZWERLING, SCHACHTER
& ZWERLING, LLP**

By: s/ Jeffrey C. Zwerling

Jeffrey C. Zwerling
Stephen L. Brodsky
Justin M. Tarshis
41 Madison Avenue
New York, NY 10010
Tel:  (212) 223-3900
Fax:  (212) 371-5969
jzwerling@zsz.com
sbrodsky@zsz.com
jtarshis@zsz.com

*Attorneys for Lead Plaintiff Movant
The Michigan Funds*