UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
MYRON and SANDY CANSON, Jointly and : Civil Action No. 1:11-cv-05382-JFK
on Behalf of All Others Similarly Situated, :
                                     : <u>CLASS ACTION</u>
                Plaintiffs, :
    vs. :
WEBMD HEALTH CORP., et al., :
                Defendants. :
---------------------------------------------------------
STEVEN MALLAND, Individually and on : Civil Action No. 1:11-cv-06031-JFK
Behalf of All Others Similarly Situated, :
                                       : <u>CLASS ACTION</u>
                  Plaintiff, :
    vs. :
WEBMD HEALTH CORP., et al., :
                Defendants. :
---------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S
SELECTION OF LEAD COUNSEL

Cleveland Bakers and Teamsters Pension Fund (the "Pension Fund") respectfully submits this memorandum of law in support of its motion for: (1) consolidation of the above-captioned related actions for pre-trial purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (2) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) approval of its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel for the class.

## I.   INTRODUCTION

Presently pending in this district are two securities class action lawsuits (the "Related Actions") on behalf of purchasers of WebMD Health Corp. ("WebMD" or the "Company") securities between February 23, 2011 and July 15, 2011 (the "Class Period") against the Company, Wayne T. Gattinella (its CEO, President, Director and Member of the Executive Committee), and Anthony Vuolo (its COO, CFO and Principal Accounting Officer) for violations of the Securities Exchange Act of 1934 (the "Exchange Act"): *Canson v. WebMD Health Corp.*, No. 1:11-cv-05382-JFK and *Malland v. WebMD Health Corp.*, No. 1:11-cv-06031-JFK.  In securities class actions, the PSLRA requires district courts to resolve consolidation before appointing a lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  Here, the Related Actions should be consolidated because they involve identical questions of law and fact.  *See* Fed. R. Civ. P. 42(a); *infra* §III.A.

As soon as practicable after deciding consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  The Pension Fund should be appointed as lead plaintiff because: (1) it timely filed this motion; (2) to its counsel's knowledge, has the largest financial interest in the relief sought

654221_1

by the class; and (3) it will fairly and adequately represent the interests of the class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Fund's selection of Robbins Geller as lead counsel for the class should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.      FACTUAL BACKGROUND

WebMD, headquartered in New York, describes itself as the leading provider of health information services to consumers, physicians, healthcare professionals, employers, and health plans through its public and private online portals, mobile platforms and health-focused publications.  The Company generates revenue from its public portals primarily through the sale of advertising and sponsorship products and from its private portals through licensing to employers and health plans.

The complaints allege that defendants misrepresented or failed to disclose material information about the Company's sponsorship contracts and customers, which impacted financial results during the five-month Class Period.  Specifically, defendants were able to artificially inflate the Company's stock by concealing the fact that: (a) WebMD was experiencing sponsorship cancellations due to extended legal and regulatory reviews; and (b) WebMD's customers, including several consumer product companies, were delaying advertising on the Company's website as a result of smaller advertising budgets.  As a result of these facts, the complaints allege that there was no reasonable basis for defendants' financial forecasts made to the market during the Class Period.

On May 5, 2011, while the Company announced mildly disappointing first quarter 2011 results, defendants reassured the market that "WebMD is well positioned for continued long term growth."  This was false, as defendants knew the Company was facing numerous sponsorship and advertising cancellations.  In fact, trends in deferred revenue, net deferred revenue, unique users per month and page views seriously deteriorated during the first quarter, in many cases falling to record lows.  In response to the disappointing earnings results, WebMD's stock declined 10%.

- 2 -

654221_1

Then, on July 18, 2011, the Company publicly confirmed what defendants knew the previous quarter, *i.e.*, that deferred revenue, net deferred revenue, unique users per month and page views deteriorated during the first quarter and defendants' statement that "WebMD is well positioned for continued long term growth" simply was not sustainable. To the contrary, because the Company was not well-positioned for long term growth, defendants were forced to lower guidance for the rest of fiscal 2011. In response to the information revealed in the July 18th press release, WebMD's stock fell another 30%. In all, the Company's stock declined more than 42% during the Class Period:



During this same five-month period, and unknown to shareholders, Company insiders sold more than 800,000 shares of their personally-held WebMD stock for gross proceeds of almost $45 million. As a result of defendants' materially false and misleading Class Period statements, WebMD's securities traded at inflated levels during the Class Period. Because of the precipitous declines in the market value of the Company's securities as the truth was revealed to the market, plaintiff and the class suffered significant losses and damages.

### III.   ARGUMENT

#### A.   The Related Actions Should Be Consolidated

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a). Here, the Related Actions assert Exchange Act claims on behalf of purchasers of WebMD securities during the same Class Period. Each of the Related Actions names the Company and the same executive officers (Gattinella and Vuolo) as defendants and involve the same factual and legal issues; namely, whether the class purchased WebMD securities at artificially inflated prices as a result of defendants' allegedly false and misleading statements, and whether defendants' conduct violates the Exchange Act. As such, "[l]itigation of these actions will require resolution of common questions of law and of fact." *In re Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406, at *9 (S.D.N.Y. 2008) (Scheindlin, J.). Therefore, consolidation is appropriate. *Id.*; *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

#### B.   The Pension Fund Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). The Pension Fund meets these requirements and should therefore be appointed as lead plaintiff.

### 1.     The Pension Fund's Motion Is Timely

The notice published in this action on August 2, 2011 advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff within sixty days, *i.e.*, by October 1, 2011. *See* Declaration of Mario Alba, Jr. in Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Alba Decl."), Ex. A. October 1st was a Saturday. Thus, pursuant to Rule 6(a)(1)(C), the "next day that is not a Saturday, Sunday, or legal holiday" is Monday, October 3, 2011. Fed. R. Civ. P. 6(a)(1)(C). Because the Pension Fund's motion is timely filed, it is entitled to be considered for appointment as lead plaintiff.

### 2.     The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Fund expended more than $265,000 purchasing over 5,000 WebMD shares at artificially inflated prices, suffering harm of more than $86,000 as the price of the shares declined in reaction to the May and July 2011 disclosures. *See* Alba Decl., Exs. B, C. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3.     The Pension Fund Satisfies Rule 23 of the Federal Rules of Civil Procedure at This Stage

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-

4(a)(3)(B)(iii)(I)(cc). "Typicality and adequacy are the only Rule 23 criteria that are relevant in determining the lead plaintiff under the PSLRA." *Kuriakose v. Fed. Home Loan Mortg. Co.*, 2008 U.S. Dist. LEXIS 95506, at *11-*12 (S.D.N.Y. 2008) (Keenan, J.). And, in "a motion to be appointed as lead plaintiff, a class member 'need only make a "preliminary showing" that the Rule's typicality and adequacy requirements have been satisfied.'" *Id.* (citation omitted).

"The requirement of typicality is met if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* at *12 (citation omitted). Further, a "lead plaintiff's claims 'need not be identical to the claims of the class to satisfy the typicality requirement.'" *Id.* (citation omitted). Here, the Pension Fund satisfies the typicality requirement because it purchased WebMD securities during the Class Period at prices inflated by the Company's alleged misrepresentations. *See* Alba Decl., Exs. B, C. "These claims are typical of the class claims because they arise from the same events and are based on the same legal theories." *Kuriakose*, 2008 U.S. Dist. LEXIS 95506, at *12.

"Rule 23's adequacy requirement is satisfied where the lead plaintiff can 'fairly and adequately protect the interests of the class.'" *Id.* at *12-*13 (citation omitted). "'In this examination, the Court scrutinizes (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims.'" *Id.* at *13 (citation omitted). Here, the Pension Fund has made a preliminary showing that it satisfies the adequacy requirement because it selected counsel with substantial experience and competence in handling complex securities litigations, does not have any interests antagonistic to the class's interests and is

an institutional investor claiming substantial losses from the alleged securities fraud, indicating that it has sufficient interest and ability to prosecute the class claims vigorously. *Id.*

As such, the Pension Fund satisfies the typicality and adequacy requirements at this stage.

### C. The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

The Pension Fund selected Robbins Geller to serve as lead counsel. *See* Alba Decl., Ex. D. Robbins Geller "has extensive experience litigating securities class actions and, therefore, has the ability to conduct the litigation effectively." *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, 2010 U.S. Dist. LEXIS 103218, at *16 (E.D.N.Y. 2010). Indeed, "Robbins Geller has served as lead or co-lead counsel in numerous securities class actions, including *In re Enron Corp. Sec. Litig.*, No. 01-H-3624, 2005 U.S. Dist. LEXIS 41240, 2005 WL 3504860 (S.D. Tex. Dec. 22, 2005), as well as several cases filed in the district courts within the Second Circuit." *Id.* at *18; *Kuriakose*, 2008 U.S. Dist. LEXIS 95506, at *28 (approving institutional investor's selection of lawyers with Robbins Geller as lead counsel). Based upon Robbins Geller's extensive experience and proven track record as counsel in securities class actions, the Pension Fund's selection of Robbins Geller as lead counsel should be approved.

### IV. CONCLUSION

The Pension Fund timely filed its motion, has a significant financial interest, satisfies the Rule 23 requirements at this stage, and selected experienced counsel to represent the class in this action. Because it satisfies each of the PSLRA's requirements for appointment as lead plaintiff, the

Pension Fund respectfully requests that the Court grant its Motion for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel.

DATED:  October 3, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARIO ALBA JR.


_____s/ Mario Alba, Jr._____
MARIO ALBA JR.

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 3, 2011.

s/ Mario Alba, Jr.
MARIO ALBA, JR.

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  malba@rgrdlaw.com

654221_1

# Mailing Information for a Case 1:11-cv-05382-JFK

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`