```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-7-11
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
MYRON CANSON and SANDY CANSON,      :
Jointly and on Behalf of All Others :
Similarly Situated,                 :
                                    :    No. 11 Civ. 5382 (JFK)
                                    :
          Plaintiffs,               :
                                    :
     -against-                      :
                                    :
WEBMD HEALTH CORP., WAYNE T.        :
GATTINELLA, and ANTHONY VUOLO,      :
                                    :
          Defendants.               :
-----------------------------------X
STEVEN MALLAND, Individually and    :
on Behalf of All Others Similarly   :
Situated,                           :
                                    :    No. 11 Civ. 6031 (JFK)
                                    :
          Plaintiff,                :
                                    :
     -against-                      :    Opinion & Order
                                    :
WEBMD HEALTH CORP., WAYNE T.        :
GATTINELLA, and ANTHONY VUOLO,      :
                                    :
          Defendants.               :
-----------------------------------X
```

APPEARANCES:

    For Movant The Michigan Funds:
    Jeffrey Zwerling, Esq.
    ZWERLING, SCHACHTER & ZWERLING, LLP

    For Movant Cleveland Bakers and Teamsters Pension Fund:
    Mario Alba, Jr., Esq.
    ROBBINS GELLER RUDMAN & DOWD LLP

    For Movant James Every:
    Kim Miller, Esq.
    KAHN SWICK & FOTI, LLC

**JOHN F. KEENAN, United States District Judge:**

The above-captioned actions are brought against WebMD Health Corp., its Chief Executive Officer, Wayne T. Gattinella, and its Chief Operating Officer/Chief Financial Officer, Anthony Vuolo, on behalf of a purported class of investors who purchased WebMD securities between February 23, 2011 and July 15, 2011. Before the Court are three motions for consolidation of the two cases, appointment as lead plaintiff, and approval of lead plaintiff's choice of counsel. For the reasons that follow, the motions for consolidation are granted. Wayne County Employees' Retirement System and Carpenters Pension Trust Fund-Detroit and Vicinity's motion for appointment as lead plaintiff is granted, and Zwerling, Schachter & Zwerling, LLP is approved as lead counsel.

## I.   Background

The following allegations are taken from the first-filed complaint in this action, <u>Canson v. WedMD Health Corp.</u>, No. 11 Civ. 5382 (JFK), which is substantially the same as the complaint in <u>Malland v. WebMD Health Corp.</u>, No. 11 Civ. 6031 (JFK). WebMD provides health information services to consumers and healthcare professionals through public and private internet portals, mobile applications, and other publications. (Compl. ¶ 7). WebMD generates revenue on its public portal through advertising, while revenue on the private portals is generated

through licensing agreements.  (Id. ¶¶ 24, 26).  On February 23, 2011, the beginning of the proposed class period, WebMD issued a press release announcing financial results for the fourth quarter of fiscal year 2010, as well as expectations for revenue growth in 2011.  (Id. ¶ 27).  On April 12, 2011, WebMD issued a press release stating that the company expected revenue for the quarter that ended March 31, 2011 to exceed analyst estimates; it also reaffirmed its financial guidance for 2011.  (Id. ¶ 31). Plaintiffs allege that these statements were materially false and misleading because WebMD failed to disclose the fact that it was experiencing sponsorship cancellations and that WebMD customers were delaying advertising on the public website due to decreased budgets.  (Id. ¶ 33).  On July 18, 2011, WebMD issued a press release lowering its financial guidance for 2011.  (Id. ¶ 37).  Following this announcement, the price of WebMD shares fell about $14.00 to close at $32.48 per share, a 30% decline. (Id. ¶ 38).

In a complaint dated August 2, 2011, the Canson plaintiffs assert claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  That same day, a notice was published in Business Wire advising potential class members of the filing of the complaint, the claims asserted therein, the proposed class period, and the right to move for appointment as lead plaintiff within 60 days.  On October 3, 2011, Wayne County

3

Employees' Retirement System and Carpenters Pension Trust Fund - Detroit and Vicinity (the "Michigan Funds"), Cleveland Bakers and Teamsters Pension Fund ("Cleveland Bakers and Teamsters"), and James Every each filed a timely motion for: (1) consolidation of the two securities fraud class action cases; (2) appointment as lead plaintiff for the proposed class; and (3) approval of lead counsel.

## II.   Discussion

### A.   Consolidation

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate where multiple cases "involve a common question of law or fact."  See Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 130 (2d Cir. 1999); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc., 229 F.R.D. 395, 402 (S.D.N.Y. 2004).  Both the Canson and Malland complaints involve securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act brought on behalf of purchasers of WebMD securities between February 23, 2011 and July 15, 2011.  The cases posit the same theory of fraud against the same corporate and individual defendants.  No party has opposed the motions for consolidation.  Therefore, the motions to consolidate Canson v. WedMD Health Corp., No. 11 Civ. 5382 (JFK), and Malland v. WebMD Health Corp., No. 11 Civ. 6031 (JFK), are granted.

**B.    Lead Plaintiff**

The Private Securities Litigation Reform Act ("PSLRA") governs the appointment of a lead plaintiff in "each private action arising under [the Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1).  Prior to such appointment, the first-filing plaintiff must publish notice of the action in a "widely circulated national business-oriented publication or wire service."  15 U.S.C. § 78u-4(a)(3)(A)(i). All lead plaintiff applications must be filed no later than 60 days after the publication of notice to potential class members. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Both of these statutory prerequisites have been satisfied.

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i). The statute creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 1.  Financial Interest

Although the PSLRA does not specify a method for determining a proposed lead plaintiff's financial interest in the relief sought by the class, many courts, including courts in this District, have adopted the four factor test first applied in Lax v. First Merchants Acceptance Corp., No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), and adopted in In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).  See, e.g., In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008); Kaplan v. Gelfond, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).  Under the so-called Olsten-Lax test, "[t]o determine which plaintiff has the largest financial interest, courts consider four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered."

Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp., 275 F.R.D. 187, 190 (S.D.N.Y. 2011).  The fourth factor, loss suffered, weighs most heavily in the court's analysis.  Kaplan, 240 F.R.D. at 93.

The Michigan Funds are comprised of the Wayne County Employees' Retirement System and the Carpenters Pension Trust Fund for Detroit and Vicinity.  Wayne County purchased a total of 11,520 WebMD shares during the class period, all of which were sold on September 14, 2011 at $32.838 per share.  Supp. Decl. of Stephen L. Brodsky, Ex. A.  Detroit Carpenters purchased a total of 13,180 WebMD shares during the class period.  Detroit Carpenters retained all of these shares throughout the class period, and sold them in a lot on September 12, 2011 at $32.3311 per share.  Decl. of Stephen L. Brodsky, Ex. E.

Cleveland Bakers and Teamsters purchased a total of 5,060 WebMD shares, which they retained throughout the class period.  The Fund sold 2,390 shares on July 19, 2011 at $36.12 per share, and the remaining 2,670 shares on August 25, 2011 at $34.66 per share.  Decl. of Mario Alba, Jr., Ex. C.

James Every purchased a total of 1,600 WebMD shares through his "Primary Account," along with an additional 2,000 shares purchased through the Coty Retirement Savings Plan Account, during the class period.  Mr. Every retained all of his shares

throughout the class period, but sold the Primary Account shares on August 29, 2011 for approximately $35 per share. He continues to hold the shares in the Coty Retirement Savings Plan Account. Decl. of Kim E. Miller, Ex. B. The following chart summarizes each candidate's financial interest in the case:

|  | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Loss |
|---|---|---|---|---|
| **The Michigan Funds** | | | | |
| Wayne County | 11,520 | 11,520 | $632,511.36 | $254,217.60 |
| Detroit Carpenters | 13,180 | 13,180 | $724,308.83 | $298,184.93 |
| Total | 24,700 | 24,700 | $1,356,820.19 | $552,402.53 |
| **Cleveland Bakers and Teamsters** | | | | |
| Cleveland Bakers and Teamsters | 5,060 | 5,060 | $265,358.50 | $86,498.57[1] |
| **James Every** | | | | |
| Primary Account | 1,600 | 1,600 | $81,415.00 | $25,396.45 |
| Coty Retirement | 2,000 | 2,000 | $102,965.00 | $35,084.62[2] |
| Total | 3,600 | 3,600 | $184,380.00 | $60,481.07 |

The Michigan Funds purchased nearly five times as many WebMD shares as Cleveland Bakers and Teamsters, and seven times as many shares as Mr. Every. Consequently, the Michigan Funds suffered combined losses over six times as large as the next most-interested lead plaintiff candidate. The suggestion by

---

[1] Cleveland Bakers and Teamsters' loss was calculated under the "first in first out" ("FIFO") method. By the Court's calculations, use of the "last in first out" ("LIFO") accounting method reduces the loss by less than $10.
[2] Mr. Every's loss in the Coty Retirement Savings Plan Account was calculated based on a value of $33.94 per retained share.

8

Cleveland Bakers and Teamsters that the Michigan Funds are attempting to artificially create the highest possible loss amount by aggregating the interests of Wayne County and the Detroit Carpenters is both unavailing and insufficient to rebut the presumption in favor of the Michigan Funds as lead plaintiff.  To begin, there is no evidence that the Michigan Funds combined their litigation efforts in bad faith; the two parties have a pre-existing relationship and have stated their intention to work together on behalf of the class.  See Joint Decl. of Robert J. Grden & Richard G. Davis at ¶¶ 5-10.  Moreover, each member of the Michigan Funds standing alone purchased more than twice as many shares, and incurred significantly higher losses, than Cleveland Bakers and Teamsters.  The PSLRA authorizes a "group of persons" to serve as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and the Court has no reason to believe that the appointment of the two largest candidates as co-lead plaintiffs will hinder, instead of promote, the efficient management of this litigation.  See Freudenberg v. E*Trade Fin. Corp., No. 07 Civ. 8538, 2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008) ("A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive."); Barnet v. Elan Corp., 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (appointing

9

group of six co-lead plaintiffs where "even were the Court to deconstruct the Group, two of its individual members would still have the 'largest financial interest'" in the action). Therefore, the Michigan Funds are the presumptive lead plaintiff unless they cannot satisfy the requirements of Rule 23.

### 2.  Adequacy and Typicality

In addition to possessing a significant financial interest, in this District a lead plaintiff must make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements.  See Kaplan, 240 F.R.D. at 94; In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998).  A lead plaintiff establishes typicality where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. dismissed sub nom., Hart Holding Co. Inc. v. Drexel Burnham Lambert Group, Inc., 506 U.S. 1088 (1993).  However, "the Lead Plaintiff's claims do not have to be identical to the other class members' claims." Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 253 (S.D.N.Y. 2003).

In considering the adequacy of a proposed lead plaintiff, "the Court scrutinizes (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the

10

litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (internal citations and quotation marks omitted).

Like the rest of the proposed class, the Michigan Funds' claims arise from their reliance on allegedly false and misleading statements in purchasing WebMD shares during the class period. The Michigan Funds affirm that their federal securities claim is the same as other class members' claims. As there is nothing to suggest that the Michigan Funds' claims are markedly different from those of other class members, the Michigan Funds have made the requisite preliminary showing of typicality. Similarly, there is no evidence that the Michigan Funds' interests in any way conflict with those of other class members. They have a significant financial stake in the outcome of this litigation, which should incentivize their vigorous pursuit of recovery for all class members. Furthermore, the Michigan Funds have retained competent counsel, Zwerling, Schachter & Zwerling, LLP, to assist them in their commitment to pursue the claims of the putative class.

As the Michigan Funds present the largest financial interest in the litigation and appear to satisfy Rule 23's requirements, they are presumptively the most adequate lead plaintiff.  No other lead plaintiff candidate has offered evidence to rebut this presumption.  Therefore, the Michigan Funds' motion for appointment as lead plaintiff is granted.

### C.   Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Michigan Funds' chosen counsel has ample experience in securities fraud class actions and is otherwise qualified to conduct this litigation.  According, the Court appoints Zwerling, Schachter & Zwerling, LLP to serve as lead counsel.

### III.     Conclusion

The above-captioned cases are consolidated for all purposes as <u>In re WebMD Health Corp. Securities Litigation</u>, No. 11 Civ. 5382 (JFK).  The Clerk of Court is directed to terminate the motions at Docket Nos. 5, 8, and 11 in Case No. 11 Civ. 5382 (JFK) and Docket No. 5 in Case No. 11 Civ. 6031 (JFK).  The Clerk is also directed to close Case No. 11 Civ. 6031 (JFK). The consolidated actions shall proceed with the Michigan Funds acting as lead plaintiff and Zwerling, Schachter & Zwerling as lead counsel.

**SO ORDERED.**

Dated:   New York, New York
         November 7, 2011

                                              John F. Keenan
                                        United States District Judge